UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| **MARIA SOCCORO GORJON** § | |
| § | |
| **Plaintiff,** § | |
| § | |
| v. § | Civil Action No. 4:25-cv-742 |
| § | |
| **CITY OF CONROE** § | |
| § | |
| § | **JURY TRIAL DEMANDED** |
| **Defendant.** § | |

**PLAINTIFF'S ORIGINAL COMPLAINT**

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW Plaintiff, Maria Soccoro Gorjon, (hereafter referred to as "Plaintiff" or "Gorjon") through his counsel of record and files this her Original Complaint against Defendant The City of Conroe, Texas ("Defendant") and would show as follows:

**I.
VENUE AND JURSDICTION**

1. This Court has jurisdiction under 28 U.S.C s. 1331.

2. Plaintiff filed her original EEOC charge with the EEOC and Texas Workforce Commission on September 19, 2024.

3. Plaintiff received her Notice of Right to Sue on November 21, 2024 and is filing this complaint with 90 days of her receipt thereof.

4. Venue is proper in the Southern District since the alleged events occurred within this Court's jurisdiction.

## II.
## PARTIES

5. Plaintiff is a Hispanic female (DOB:11/26/1965) and a citizen if Texas. The Plaintiff resides at 215 Twilight Toast Drive, Conroe, TX 77304 and may be reached though the undersigned counsel.

6. Defendant, City of Conroe is a municipality located at 300 West Davis Street Conroe, TX 77301 and may be served through the office of the Attorney General, P.O. Box 12548 Capital Station, Austin, TX 78711-2548.

## III.
## FACTS

7. Plaintiff was employed by Defendant for 32 years. During that time, Plaintiff was the Assistant City Secretary for 19.5 years.

8. In the spring of 2024, there were two political factions at odds with each other. The mayor Todd Yancey ("Yancey"), Kurt Maddox ("Maddox") on the one hand and Howard Wood ("Wood") Harry Hartman ("Hartman") and Marsha Porter ("Porter") on the other.

9. In 2024, Yancey and Maddox were up for re-election.

10. Plaintiff's job duties included accepting the applications for city elections, qualifying these applications, and placing the qualified applicants on the official ballot.

11. A dispute arose over these applications because the notary who notarized the signatures did so outside of the applicant's presence. This was a common practice and Plaintiff in her capacity as City Secretary refused to reject the ballots for this reason.

12. Despite numerous challenges to Plaintiff's position regarding the ballots, Plaintiff ultimately prevailed over any objection to her qualifying the applications and placing them on the ballot.

13. Following the election, Plaintiff sought damages from the Defendant for the mental anguish and legal fees that she sustained while defending her actions against the city both internally and through judicial proceedings.

14. In response to her request, Defendant unilaterally placed Plaintiff on Mandatory medical leave citing medical reasons.

15. Plaintiff had not asked to be on leave and in fact, asked to work through the general election scheduled for May 2024 to ensure that it would be handled correctly.

16. Defendant modified Plaintiff's employment status when it placed her on Administrative/medical leave with pay. After Plaintiff went out on leave, she was denied access to her computer and access to the building.

   a. **Disparate Treatment based on National Origin and Gender**

17. Hispanics make up approximately 25% of the population in Conroe, yet Plaintiff was the only Hispanic in her department.

18. Plaintiff's position was demanding and stressful. Plaintiff's repeated requests for additional staff went ignored. Yet, for other male department heads it was not an issue.

19. When Plaintiff was eventually given the additional position, Defendant

required Plaintiff to place the position on hold due to budgetary issues.

20. This led to sometimes unreasonable working hours getting the job done. Plaintiff's busy schedule was not shared by her male contemporaries since she was regularly the last one to leave the building during the week and often the only one at the office on weekends.

21. Plaintiff underwent periodic performance reviews, but her pay raises were never to the level of the other mostly male Caucasian department heads.

22. It was not until recently that at the request of a new City Administrator, Plaintiff's salary was adjusted to levels commensurate with the other male department heads with similar tenure.

23. Plaintiff estimates that her salary was 20-25% less than the other Male department heads throughout her career.

24. Plaintiff's adjusted compensation made her the highest paid Hispanic in City Hall.

25. The fact that Plaintiff was the highest ranking Hispanic female city employee with a salary at par to the other department heads was resented by the other male department heads. Plaintiff was continuously reminded by city officials/councilmen, especially during public meetings, discussions/disagreements about city business.

26. Since these department heads had the power to terminate Plaintiff's employment Plaintiff was constantly uncomfortable and intimidated. Consequently, Plaintiff was afraid to complain about such comments.

27. In a meeting in Late May 2024, Harry Hardman ("Hardman ") Mayor Pro Tem for the City of Conroe that Plaintiff's salary was too high for a "Mexican Woman."

28. Plaintiff presents evidence that her salary was proportionally lower than her male counterparts at the same level and tenure for most of my career.

29. On June 20, 2024, Plaintiff made a formal request for FMLA leave from 6/17/24 to 7/29/24 for abdominal surgery and recovery.

30. Although Plaintiff's FMLA Request was approved she was terminated on July 25, 2024.

31. Following Plaintiff's termination, she was replaced by a younger less experienced individual.

b. **Sexual Harassment in the Workplace**

32. During her employment Plaintiff was repeatedly sexually harassed by Former Council Member and Mayor Pro Tem Duke Coon ("Coon") and Current Mayor Pro Tem Harry Hardman. These incidents were witnessed by co-workers including the City Administrator.

33. Coon would often stop by Plaintiff's office, knowing that Plaintiff was married, would quickly digress to random statements that included but were not limited to "I wish you were not married", repeatedly expressing his wish to marry Plaintiff because he "needed to marry me a good and beautiful Hispanic woman"

34. Coon would offer Plaintiff financial security stating that his company was doing very well and that he could provide Plaintiff with a very comfortable lifestyle and that he would treat Plaintiff as a queen.

35. Coon would also tell Plaintiff that his Hispanic mother would be extremely happy and proud if he would marry a Hispanic woman like Plaintiff and would often leave trinkets and drawings of little hearts in his Council book and underneath Plaintiff's computer keyboard.

36. Coon's unwelcome comments and statement about Plaintiff's attire were of a sexual nature and made Plaintiff extremely uncomfortable in the workplace.

37. Hardman (Mayor Pro Tem) went on a trip with his grandson. Upon his return he came to Plaintiff's office to relate that he had had a great time and other details of his trip. Hardman then mentioned with a big smile on his face that it had been extremely cold, so cold in fact that his "little peanut almost disappeared".

38. Hardman repeated this several times even in Spanish during his conversations with Plaintiff.  On another occasion, Hardman asked Plaintiff to join him in his office to discuss an office issue. During the conversation, he told Plaintiff that his wife had expressed high regards for Plaintiff and had advised Hardman to fire Plaintiff as he had done to Paul Virgadamo (City Administrator) and Steve Williams (Finance Director).  The conversation continued during which Hardman expressed that he trusted Plaintiff as a friend but that he really wanted to make sure he could trust her.

39. Hardman would then make very uncomfortable comments about Plaintiff's appearance and her attire .

### III.
### CAUSES OF ACTION

### COUNT ONE

### SEX DISCRIMINATION AND HARASSMENT IN VIOLATION OF TITLE VII, 42 U.S.C. § 2000(E) ET SEQ.  AND CHAPTER 21 OF THE TEXAS LABOR CODE

40. The foregoing paragraphs of this Complaint are incorporated in this count as fully as if set forth at length herein.

41. Plaintiff is an employee within the meaning of 42 U.S.C. § 2000e(f) Title VII and Chapter 21 of the Texas Labor Code.

42. Defendant is an employer within the meaning of 42 U.S.C. § 2000e(d) Title VII.

43. Defendant is also an employer within the meaning of Chapter 21 of the Texas Labor Code.

44. Plaintiff timely filed a charge with the EEOC and the Texas work force commission and filed his original civil action within 90 days of his receipt thereof.

45. Plaintiff was sexually harassed in the workplace by a management employees who made unwelcome advances and comments that that made the work place a sexually hostile environment.

46. Defendant took no action to alleviate the harassment or provide Plaintiff with a harassment free work environment.

47. Plaintiff therefore claims sexual harassment by hostile work environment in violation of Title VII and Chapter 21 of the Texas Labor Code.

## COUNT TWO

## DISCRIMINATION BASED NATIONAL ORIGIN IN VIOLATION OF TITLE VII, 42 U.S.C. § 2000(E) ET SEQ. AND CHAPTER 21 OF THE TEXAS LABOR CODE

48. The foregoing paragraphs are incorporated herein as though fully set forth.

49. Defendant's management repeatedly told Plaintiff that she earned too much money as a Hispanic female.

50. Defendant paid Plaintiff less in wages than a number of male employees who held the same position and the same responsibilities.

51. Defendant comments that Plaintiff was the highest paid Hispanic woman in the department reflects bias based on national origin and gender. Such comments reflect discriminatory bias based on national origin and is in violation of Title VII and Chapter 21 of the Texas Labor Code.

## COUNT THREE

## VIOLATION OF THE AGE DISCRIMINATION IN EMPLOYMENT ACT

## 29 U.S.C. § 621 to 29 U.S.C. § 634 AND CHAPTER 21 OF THE TEXAS LABOR CODE

52. The foregoing paragraphs are incorporated herein as though fully set forth.

53. Defendant discriminated against the Plaintiff based upon her age in violation of the Age Discrimination in Employment Act and chapter 21 of the Texas Labor Code.

## COUNT FOUR

## VIOLATION OF THE FAMILY MEDICAL LEAVE ACT 29 CFR PART.825

54. The foregoing paragraphs are incorporated herein as though fully set forth.

55. Defendant wrongfully terminated the Plaintiff while she was on family medical leave and therefore interfered with her FMLA rights.

## VII.
## ATTORNEY'S FEES

56. Plaintiffs seek to recover attorney's fees.

## VII.
## JURY DEMAND

57. Plaintiffs demand a trial by jury.

WHEREFORE, Plaintiff prays that this Court grant Plaintiff's recovery of all amounts to which she is entitled whether at law or in equity, including but not limited to:

A. Lost wages in the form of back pay and front pay;

B. All costs;

C. Compensatory damages;

D. Reinstatement to her former position plus benefits and back pay

E. Attorney's fees;

F. Such other and further damage as the court deems fit.

Dated: February 19, 2025.

                                                    Respectfully submitted,

**LAW OFFICES OF NICK O'KELLY, PLLC**

By:    /s/ *Nicholas A. O'Kelly*
        Nicholas A. O'Kelly
        State Bar No. 15241235
        The Law Offices of Nick O'Kelly, PLLC.
        8080 North Central Expy, #1700
        Dallas, TX 75206
        Office Phone: (214) 233-6154
        Email: nick@okellylawyer.com

**ATTORNEY FOR PLAINTIFF**
**MARIA SOCCORO GORJON**