**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **MARIA SOCORRO GORJON** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 4:25-cv-742** |
| | § | |
| **CITY OF CONROE** | § | |
| | § | |
| | § | **JURY TRIAL DEMANDED** |
| **Defendant.** | § | |

---

**PLAINTIFF'S AMENDED COMPLAINT**

---

**TO THE HONORABLE JUDGE OF SAID COURT:**

COMES NOW Plaintiff, Maria Socorro Gorjon, (hereafter referred to as "Plaintiff" or "Gorjon") through her counsel of record and files this her Amended Complaint against Defendant the City of Conroe, Texas ("Defendant") and would show as follows:

**I.**
**VENUE AND JURSDICTION**

1.     This Court has jurisdiction under 28 U.S.C s. 1331.

2.     Plaintiff filed her original EEOC charge with the EEOC and Texas Workforce Commission on September 19, 2024.

3.     Plaintiff received her Notice of Right to Sue on November 21, 2024 and is filing this complaint with 90 days of her receipt thereof.

4.     Venue is proper in the Southern District since the alleged events occurred within this Court's jurisdiction.

## II.
## PARTIES

5.      Plaintiff is a Hispanic female (DOB:11/26/1965) and a citizen of Texas.  The Plaintiff resides at 215 Twilight Toast Drive, Conroe, TX 77304 and may be reached through the undersigned counsel.

6.      Defendant, City of Conroe is a municipality located at 300 West Davis Street Conroe TX 77301 and may be served through the office of the Attorney General, P.O. Box 12548 Capital Station, Austin, TX 78711-2548.

## III.
## FACTS

7.      Plaintiff was employed by Defendant for 32 years. During that time, Plaintiff became the City Secretary in 2017 until her termination.

8.      In the Spring 2024, there were two political factions at odds with each other. Council Member Todd Yancey ("Yancey"), who was running for Mayor and Council Member Curt Maddux ("Maddux") (also Mayor Pro Tem) Yanceywas seeking re-lection as Mayor, and Council Member Maddux was seeking reelection as Council.

9.      In 2024 Yancey and Maddux were up for re-election. At that time, Plaintiff's job duties included accepting the applications for city elections, qualifying these applications, and placing the qualified applicants on the official ballot.

10.      A dispute arose over these applications because the notary who notarized their signatures did so outside of the applicant's presence.  This was a common practice and Plaintiff in her capacity as City Secretary refused to reject the ballots for this reason.

11.     Despite numerous challenges to Plaintiff's decision regarding the ballots, Plaintiff ultimately prevailed over any objection to her qualifying the applications and placing them on the ballot.

12.     Defendant had challenged Plaintiff's decision both internally and in civil proceedings in which Plaintiff ultimately prevailed. Plaintiff then asked to work through the general election that was scheduled for May 2024 to ensure that it would be handled correctly. Defendant declined Plaintiff's request.

13.     Prior to the election, Defendant unilaterally placed Plaintiff on mandatory indefinite leave, citing "medical reasons." Defendant did this to effectively terminate Plaintiff's employment.

14.     After Plaintiff went out on mandatory leave, Defendant denied her access to her computer and to the building. Defendant also rerouted Plaintiff's office phone line.

15.     While Plaintiff was out on mandatory leave, Plaintiff sought damages from the Defendant for approximately $30,000.00 in legal costs that she incurred during the civil proceedings. Defendant denied Plaintiff's request for reimbursement.

16.     On June 17, 2024, Plaintiff applied and was approved for FMLA Leave for surgery and post-op recovery until July 29, 2024.

17.     On July 22, 2024, Plaintiff received a letter from Defendant's City Administrator, Gary Scott ("Scott") stating that Plaintiff's employment was going to be terminated for "good cause" effective July 25, 2024.

18.     Defendant's stated reasons for Plaintiff's termination did not constitute good cause. For example, one of the stated reasons for Plaintiff's termination was her decision to approve the applications of the two candidates for the 2024 mayoral election, even though Plaintiff had

successfully established in court that in her role as City Secretary, Plaintiff had authority to approve these applications. Defendant also charged Plaintiff with intentionally violating state law. This is also false.

### A. Sexual Harassment in the Workplace

19.     During her employment with Defendant, Plaintiff was repeatedly sexually harassed by the current Mayor Pro Tem Harry Hardman and Duke Coon, Council member, Mayor Pro Tem and current mayor. These incidents were witnessed by co-workers including the City Administrator and took place in the workplace.

20.     In early 2023, Hardman (Mayor Pro Tem) returned from a hunting trip with his grandson. Upon his return, Hardman came to Plaintiff's office to relate that he had a great time and other details of his trip. Hardman then mentioned with a big smile on his face that it had been so cold in fact that his "little peanut almost disappeared."

21.     Hardman made this comment several times even in Spanish during his conversations with Plaintiff.  Plaintiff reported Hardman's behavior to the City Administrator manager who was astonished but took no action. On another occasion, Hardman asked Plaintiff to join him in his office to discuss an office issue. Hardman told Plaintiff that his wife and daughter expressed high regards for Plaintiff and had advised Hardman not to fire Plaintiff.

22.     Hardman would frequently comment about Plaintiff's appearance and her attire. These comments made Plaintiff extremely uncomfortable in the workplace.

23.     Hardman's unwelcome behavior was a continuation of harassing conduct that began with Coon in 2016 and continued while he was in office.

24.     Coon often stopped by Plaintiff's office knowing that Plaintiff was married would quickly digress to random statements that included such statements as "I wish you were not

married". Coon repeatedly expressed his wish to marry Plaintiff because he needed to marry a good and beautiful Hispanic woman."

25.    Coon would offer Plaintiff financial security stating that his company was doing very well and that he could provide Plaintiff with a very comfortable lifestyle and treat Plaintiff as a queen.

26.    Coon would also tell Plaintiff that his Hispanic mother would be extremely happy and proud if he would marry a Hispanic woman like Plaintiff and would often leave trinkets and drawings of little hearts in his Council book and underneath Plaintiff's computer keyboard.

27.    Coon's unwelcome comments and statement about Plaintiff's attire were of a sexual nature and Hardman's comments, when combined with Defendant's failure to take any action to restrain such conduct, created a sexually hostile work environment that made Plaintiff feel intimidated and uncomfortable.

**B.    <u>Disparate Treatment Based on National Origin and Gender</u>**

28.     Hispanics make up approximately 25% of the population in Conroe, yet Plaintiff was the only Hispanic in her department.

29.    Plaintiff is a 59-year-old Hispanic female. Her position as City Secretary was demanding and stressful. Despite her repeated requests for more staff, Defendant ignored Plaintiff's requests. Yet, other male non-Hispanic department heads did not have to repeat their requests for additional help as often as the Plaintiff.

30.    When Plaintiff was eventually given the additional position, Defendant directed Plaintiff to place the position on hold due to budgetary issues.

31.    This caused Plaintiff to work considerably more hours in comparison to other similarly situated employees, such as Department Heads.

32.    Plaintiff's busy schedule was not shared by her male, non-Hispanic counterparts. Plaintiff was regularly the last one to leave the building during the week and often the only one at the office on weekends.

33.    Plaintiff had annual performance reviews wherein she was consistently rated as "meeting or exceeding expectations." Even though Plaintiff's job performance was satisfactory or above, her pay raises were consistently less than the raises awarded to the mostly male Caucasian similarly situated employees.

34.    It was not until recently on August 11, 2022 and at the request of a new City Administrator, that Plaintiff's salary was adjusted to levels commensurate with the other male similarly tenured Caucasian department heads. However, Plaintiff continued to work a heavier workload than her male counterparts.

35.    Plaintiff estimates that her salary was 20-25% less than the other male Caucasian department heads throughout most of her career.

36.    Plaintiff's adjusted compensation made her the highest paid Hispanic female in City Hall.

37.    The fact that Plaintiff was the highest ranking Hispanic female city employee with a salary at par with the other department heads was resented by the male department heads. Hardman and other department heads continuously reminded Plaintiff of her salary level in internal meetings.

38.    These comments made Plaintiff uncomfortable and intimidated. Consequently, Plaintiff was afraid to complain about such comments.

39.    In an internal meeting in May 2023, Hardman told Plaintiff in front of the City Administrator that she was the highest paid Hispanic woman in city hall.

40.     Plaintiff presents evidence that her salary was proportionally lower than her male counterparts at the same level and tenure for most of her career.

41.     In May 2005, Plaintiff was asked to join the City Secretary's Office. At the time, Plaintiff was at the top of her salary scale, Defendant told Plaintiff that she was getting promotion to undertake the office of the Assistant City Secretary and Hispanic Liaison.  Even though Plaintiff had two major roles within the Defendant's organization, she only received a 9% raise rather than the standard 10% that was normally given for promotion.  This discrepancy continued until her termination.

42.     On June 17, 2024, Plaintiff made a formal request for FMLA leave from  6/17/24 to 7/29/24 for abdominal surgery and recovery.

43.     Although Plaintiff's FMLA request had been previously approved, Plaintiff was terminated on July 25, 2024 while she was still on FMLA leave.

44.     Following Plaintiff's termination, her duties were assumed by Plaintiff's Assistant, Sami Quinlan, who is significantly younger and less experienced than Plaintiff.

**IV.**
**CAUSES OF ACTION**

**COUNT ONE**

**SEX DISCRIMINATION AND HARASSMENT IN VIOLATION OF TITLE VII, 42 U.S.C. § 2000(E) ET SEQ.  AND CHAPTER 21 OF THE TEXAS LABOR CODE**

45.     The foregoing paragraphs of this Complaint are incorporated in this count as fully as if set forth at length herein.

46.     Plaintiff is an employee within the meaning of 42 U.S.C. § 2000e(f) Title VII and Chapter 21 of the Texas Labor Code.

47.    Defendant is a Hispanic female. Defendant is male and an employer within the meaning of 42 U.S.C. § 2000e(d) Title VII.

48.    Defendant is also an employer within the meaning of Chapter 21 of the Texas Labor Code.

49.    Plaintiff timely filed a charge with the EEOC and the Texas Work Force Commission and filed her original civil action within 90 days of her receipt pf the Notice of Right to Sue.

50.    Plaintiff was sexually harassed in the workplace by management and employees who made unwelcome advances and comments that that made her work place a sexually hostile environment.

51.    Defendant took no action to alleviate the harassment or provide Plaintiff with a harassment free work environment.

52.    Plaintiff therefore claims sexual harassment by hostile work environment in violation of Title VII and Chapter 21 of the Texas Labor Code.

.

## COUNT TWO

## DISCRIMINATION BASED NATIONAL ORIGIN AND GENDER IN VIOLATION OF TITLE VII, 42 U.S.C. § 2000(E) ET SEQ.  AND CHAPTER 21 OF THE TEXAS LABOR CODE

53.    The foregoing paragraphs are incorporated herein as though fully set forth.

54.     Defendant's management repeatedly told Plaintiff that she earned too much money as a Hispanic female.

55.    Defendant paid Plaintiff less in wages than a number of male employees who held the same position and the same level of responsibilities but performed less work than Plaintiff.

56.     Defendant's comments that Plaintiff was the highest paid Hispanic female in the department reflects an unlawful bias based on national origin and gender. These comments created a hostile work environment and are in violation of Title VII and Chapter 21 of the Texas Labor Code.

## COUNT THREE

## VIOLATION OF THE AGE DISCRIMINATION IN EMPLOYMENT ACT 29 U.S.C. § 621 to 29 U.S.C. § 634 (ADEA) AND CHAPTER 21 OF THE TEXAS LABOUR CODE

57.     The foregoing paragraphs are incorporated herein as though fully set forth.

58.     Plaintiff was a 59-year old Hispanic female who was meeting the Defendant's expectations. Plaintiff was summarily terminated on July 25, 2024. Defendants stated reasons for Plaintiff's termination were either false or unsubstantiated.

59.     Upon information and belief, Defendant replaced Plaintiff with a significantly younger employee with less experience.

60.     Defendant discriminated against the Plaintiff based upon her age in violation of the Age Discrimination in Employment Act (ADEA) and Chapter 21 of the Texas Labor Code.

61.     Plaintiff is entitled to recover lost wages, compensatory damages and attorney's fees.

## COUNT FOUR
## VIOLATION OF THE FAMILY MEDICAL LEAVE ACT, 29 CFR PART.825

62.     The foregoing paragraphs are incorporated herein as though fully set forth.

63.     Defendant is a covered employer under Family Medical Leave Act.

64.     Plaintiff is a covered employee under the Family Medical Leave Act.

65. On June 17, 2024, Plaintiff requested FMLA Leave and was approved to remain on FMLA leave through July 29, 2024.

66. Defendant wrongfully terminated the Plaintiff while she was on approved Family Medical Leave and thereby interfered with the Plaintiffs FMLA rights.

67. Plaintiff is therefore entitled to reinstatement and attorney fees.

## V.
## ATTORNEY'S FEES

68. Plaintiffs seeks to recover attorney's fees.

## VI.
## JURY DEMAND

69. Plaintiffs demands a trial by jury.

WHEREFORE, Plaintiff prays that this Court grant Plaintiff's recovery of all amounts to which she is entitled whether at law or in equity, including but not limited to:

A. Lost wages in the form of back pay and front pay;

B. All costs;

C. Compensatory damages;

D. Reinstatement to her former position plus benefits and back pay

E. Attorney's fees;

F. Such other and further damage as the court deems fit.

Dated: March 4, 2025.

Respectfully submitted,

**LAW OFFICES OF NICK O'KELLY, PLLC**

By:    /s/ *Nicholas A. O'Kelly*
       Nicholas A. O'Kelly
       State Bar No. 15241235
       The Law Offices of Nick O'Kelly, PLLC.
       8080 North Central Expy, #1700
       Dallas, TX 75206
       Office Phone: (214) 233-6154
       Email: nick@okellylawyer.com

       **ATTORNEY FOR PLAINTIFF**